UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA FOREST LEGACY, CENTER FOR BIOLOGICAL DIVERSITY, SIERRA CLUB, and DEFENDERS OF WILDLIFE, <br><br>  Plaintiffs, <br><br>  v. <br><br> UNITED STATES FOREST SERVICE; ABIGAIL KIMBALL, in her official capacity as Chief of the Forest Service; CHARLES MYERS, in his official capacity as Associate Deputy Chief of the Forest Service; RANDY MOORE, in his official capacity as Regional Forester, Region 5, U.S. Forest Service; BETH PENDLETON, in her official capacity as Deputy Regional Forester, Region 5, U.S. Forest Service; UNITED STATES FISH AND WILDLIFE SERVICE; and NATIONAL MARINE FISHERIES SERVICE, <br><br>  Defendants. | No. C-08-4240 SC <br><br> ORDER GRANTING FEDERAL DEFENDANTS' <u>MOTION TO DISMISS</u> |

## I.   **INTRODUCTION**

This litigation arises out of an amendment to the "land and resource management plan" for the Sierra Nevada National Forest adopted by the United States Forest Service ("Forest Service"). See Compl., Docket No. 1. In addition to challenging the Forest Service's amendment, Plaintiffs Sierra Forest Legacy, Center for Biological Diversity, Sierra Club, and Defenders of Wildlife (collectively "Plaintiffs") challenge the concurring opinions

1   issued by the National Marine Fisheries Service ("NMFS") and the
2   United States Fish and Wildlife Service ("FWS", collectively with
3   NMFS referred to as "Wildlife Services") that the amendment would
4   have no effect on certain threatened or endangered species.  Id.
5   Plaintiffs seek declaratory and injunctive relief.

6   Before the Court is a motion by the Wildlife Services to
7   dismiss all claims against them for lack of subject-matter
8   jurisdiction and for failure to state a claim.  Docket No. 5
9   ("Motion").  Plaintiffs opposed the Motion and the Wildlife
10  Services replied.  Docket Nos. 13, 15.  The Forest Service and the
11  various individual defendants did not participate in the briefing
12  on this Motion.  Having reviewed the parties' submissions, the
13  Court finds that Plaintiffs lack standing to bring suit against
14  the Wildlife Services and that the Court therefore lacks
15  jurisdiction.  The Court GRANTS the Wildlife Services' Motion.

17  **II.   FACTUAL BACKGROUND**

18  There are ten National Forests in the Sierra Nevada mountain
19  range.  These forests are managed by the Forest Service pursuant
20  to the National Forest Management Act ("NFMA"), 16 U.S.C. § 1601
21  et seq.  The NFMA requires that the Forest Service adopt a plan
22  for each national forest unit in order to, among other things,
23  "provide for diversity of plant and animal communities."  16
24  U.S.C. § 1604(g)(3)(B).  The Forest Service adopted management
25  plans for each of the forests in the Sierra Nevada.  Pursuant to
26  the plan for each forest, the Forest Service tracked the
27  population of "management indicator species" ("MIS") - certain

bellwether species whose population fluctuations are believed to be indicators of the effects of various forest management activities. See Compl. ¶¶ 28-29. Prior to the amendment that is the subject of this litigation, discussed in detail below, there were 60 such MIS being followed in the Sierra Nevada. Id. ¶ 30. For each MIS, the Forest Service adopted detailed monitoring protocols, management objectives, and specific thresholds for reconsideration of management actions or adoption of mitigation measures. Id. ¶¶ 30-32.

In December 2007, the Forest Service, through the authority of the Regional Forester, adopted an amendment to the MIS list for the forests in the Sierra Nevada ("MIS Amendment"). Id. ¶ 35. The MIS Amendment reduces the number of species on the MIS list from 60 to 13, allows the Forest Service to proceed with certain projects without fully monitoring the effects of those projects on MIS, and adds new MIS without establishing protocols for monitoring the populations, setting management objectives, or providing for mitigation measures to respond to population fluctuation. Id. ¶¶ 36-38. Finally, the MIS Amendment exempts numerous previously-approved projects from any sort of monitoring requirements. Id. ¶ 39.

Prior to adopting the MIS Amendment, the Regional Forester prepared an Environmental Impact Statement ("EIS"), as required by the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. Id. ¶ 40; see also Section III, infra. The EIS concludes that the MIS Amendment would have "no ecological effects." Id. The Regional Forester also prepared a Biological Assessment of the

3

1  impact of the MIS Amendment on certain species protected by the
2  Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq. Id. ¶
3  41.  The Biological Assessment concluded that the MIS Amendment
4  would have "no effect" on threatened or endangered species, or on
5  the critical habitat of such species.  Id.

6  In October 2007, NMFS sent a letter to the Regional Forester
7  concurring that the MIS Amendment would have "no effect" on ESA-
8  listed species.  Id. ¶ 42.  Also in October 2007, the Deputy
9  Division Chief of the California/Nevada Operations Office of FWS
10 sent an email to the Forest Service indicating FWS's concurrence
11 in the Forest Service's "no effect" determination.  Id.  Based on
12 its own conclusions and the concurrences of NFMA and FWS that the
13 MIS Amendment would have "no effect" on the relevant species, the
14 Forest Service implemented the MIS Amendment without engaging in
15 formal consultation with either NFMA or FWS.  Id.

16 On December 14, 2007, the Deputy Regional Forester of the
17 Pacific Southwest Region of the Forest Service signed the record
18 of decision approving the MIS Amendment.  Id. ¶ 43.  Plaintiffs
19 appealed that decision, but their appeal was denied by the
20 Associate Deputy Chief of the Forest Service.  See id. ¶¶ 44-47.

21 Shortly after their administrative appeal was denied,
22 Plaintiffs filed this suit, alleging violations of the ESA, NEPA,
23 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et
24 seq.  With regard to the Wildlife Services, Plaintiffs contend
25 that both NMFS and FWS gave their concurrences in the "no effect"
26 determination without properly researching the issues, and that
27 the concurrences were therefore arbitrary and capricious.
28

4

### III. STATUTORY FRAMEWORK

A brief overview of the statutory and regulatory framework underlying this dispute is warranted. The Forest Service, an agency within the United States Department of Agriculture, is responsible for the management of National Forests and grasslands. The Forest Service promulgates regulations in a three-tier system, pursuant to the Forest and Rangeland Renewable Resources Planning Act of 1974 and the NFMA. See Citizens for Better Forestry v. U.S. Dept. of Agric., 341 F. 3d 961, 965 (9th Cir. 2003) ("Citizens") (citing 16 U.S.C. §§ 1601-1687). At the highest level, the Secretary of Agriculture promulgates national regulations, which govern the development of the regional and local forest management plans and require NEPA compliance. Id. (citing 16 U.S.C. § 1604(g)). The second tier comprises "land and resource management plans" ("LRMPs"), governing the management of forest regions. Id. at 966. Finally, there are "site-specific" plans, designed to implement specific, on-the-ground actions that are consistent with the national regulations and the LRMPs. Id. The Sierra National Forest LRMP is at issue in this suit.

Prior to taking any "major Federal action[] significantly affecting the quality of the human environment," a federal agency must prepare an Environmental Impact Statement. See 42 U.S.C. § 4332(2)(C). When an agency is uncertain as to whether a proposed action requires an EIS, it may first prepare a more concise Environmental Assessment ("EA") to determine if the EIS is necessary. See 40 C.F.R. §§ 1501.4(a), 1508.9. In addition to these requirements under NEPA, federal agencies must comply with

5

the ESA.  Prior to any agency action, including the promulgation of new regulations, the agency must determine whether the proposed action jeopardizes or affects any endangered or threatened species, or adversely affects the critical habitats of such species.  This determination may require the agency to consult with either the Secretary of Commerce or the Secretary of Interior.  See 16 U.S.C. § 1536(a)(2)-(4); 50 C.F.R. § 402.14.[1]  If the Secretary advises the agency that endangered or threatened species may be present at the site of the proposed action, the agency must prepare a "Biological Assessment" describing those species and the possible effects on them.  Id. § 1536(c); see also Citizens, 341 F.3d at 967 n.3.  The Biological Assessment may be conducted as part of the agency's NEPA-compliant EIS or EA.  16 U.S.C. § 1536(c); see also 50 C.F.R. § 402.12.  If the agency consults with the Secretary informally and concludes that no threatened or endangered species or habitat will be affected, it need not engage in formal consultation.  50 C.F.R. § 402.14(b).

**IV.   LEGAL STANDARD**

The Wildlife Services seek dismissal of Plaintiffs' Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Specifically, the Wildlife Services argue that Plaintiffs lack standing to sue and that the APA does not establish jurisdiction because the Wildlife Services'

---

[1] The agency must consult with the Secretary of Commerce if the proposed action will affect marine species, or the Secretary of Interior if the action will affect non-marine species.  See Citizens, 341 F.3d at 967 n.3; 16 U.S.C. § 1532(15).

6

concurrences at issue were not final agency actions as required by 5 U.S.C. § 704. See Mot.

The Court may dismiss a complaint for lack of subject-matter jurisdiction where the action (1) "does not 'arise under' the Federal Constitution, laws or treaties (or fall within one of the other enumerated categories of Art. III, § 2);" (2) "is not a 'case or controversy' within the meaning of that section;" or (3) "is not one described by any jurisdictional statute." Baker v. Carr, 369 U.S. 186, 198 (1962); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"Federal courts are courts of limited jurisdiction." United States v. Marks, 530 F.3d 799, 810 (9th Cir. 2008). Plaintiffs, as the parties seeking to invoke the jurisdiction of the Court, have "the burden of proving the actual existence of subject matter jurisdiction." Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996) (per curiam). Plaintiffs assert that jurisdiction is appropriate under the APA. Compl. ¶ 4; Opp'n at 7-11.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004), cert. denied, 544 U.S. 1018 (2005). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. The instant motion is a facial challenge to Plaintiffs' Complaint.

7

## V. DISCUSSION

### A. Article III Standing

The Supreme Court has held that, to satisfy the requirements for standing under Article III, a plaintiff must show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 520 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

The Wildlife Services argue that Plaintiffs have failed to allege any injury caused by the actions of NMFS or FWS. Mot. at 8-10. At most, the Wildlife Services contend, Plaintiffs have alleged an injury resulting from the Forest Service's "no effect" determination, but not from the concurrences issued by NMFS and FWS. See id. at 9. Plaintiffs claim they have suffered an injury in fact in two ways: first, Plaintiffs allege that they suffered a procedural injury as a result of the Wildlife Services' failure to comply with the ESA consultation requirements; second, Plaintiffs allege that the Wildlife Services concurrences are injurious because they provide a foundation for the Forest Service's adoption of the MIS Amendment. Opp'n at 12-15.

The parties agree that Plaintiffs' suit is a procedural challenge. To satisfy the injury in fact requirement when asserting a claim based on procedural violations, a plaintiff must

8

allege (1) that the defendant federal agency violated a procedural rule; (2) that the violated rule protects the plaintiff's concrete interests; and (3) that it is reasonably probable that the challenged action will threaten the concrete interest. See Citizens, 341 F.3d at 969-970.

Plaintiffs assert that the Wildlife Services failed to comply with the consultation requirements of the ESA because they did not base their concurrences on the best scientific and commercial data available. Opp'n at 12; see also 16 U.S.C. § 1536(a)(2). The Court need not reach the validity of the concurrences, however, because Plaintiffs have failed to establish that the concurrences were required. Section 7(a)(2) of the ESA sets forth the consultation requirements for the action agency and the Wildlife Services:

> Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical, unless such agency has been granted an exemption for such action by the Committee pursuant to subsection (h) of this section. In fulfilling the requirements of this paragraph each agency shall use the best scientific and commercial data available.

16 U.S.C. § 1536(a)(2). It is the last provision - that "each agency shall use the best scientific and commercial data available" - that Plaintiffs allege the Wildlife Services

9

violated. However, that provision is only applicable "[i]n fulfilling the requirements" of that section of the statute, which relate to formal interagency consultation. As the Forest Service never initiated formal consultation, there was no requirement imposed on the Wildlife Services, including the use of the best scientific and commercial data, and therefore no procedural violation.

The Forest Service's initial determination that the MIS Amendment would have no effect on listed species is dispositive with respect to the ESA. Under the ESA, once the action agency makes the "no effect" determination, there is no trigger for formal consultation. The Ninth Circuit has been clear on this point:

> In order to ensure compliance with the Act, the ESA and its implementing regulations require federal agencies ("action agencies") to consult with the appropriate federal fish and wildlife agency - NMFS in this case - whenever their actions "may affect" an endangered or threatened species. See 50 C.F.R. § 402.14(a). Thus, if the agency determines that a particular action will have no effect on an endangered or threatened species, the consultation requirements are not triggered.

Pac. Rivers Council v. Thomas, 30 F.3d 1050, 1054 n.8 (9th Cir. 1994); see also S.W. Ctr. for Bio. Diversity v. U.S. Forest Serv., 100 F.3d 1443, 1447 (9th Cir. 1996) (Forest Service's "no effect" determination obviates the need for formal consultation). The "no effect" determination is a decision of the action agency, not the Wildlife Services. See Defenders of Wildlife v. Flowers, 414 F.3d 1066, 1068 (9th Cir. 2005).

10

Plaintiffs' attempts to overcome this obstacle fall short. First, Plaintiffs cite to the Supreme Court's decision in <u>Bennett v. Spear</u>, 520 U.S. 154, 176 (1997), for the proposition that the ESA requirement that the Wildlife Services use the best scientific and commercial data "is to ensure that the ESA not be implemented haphazardly." The Wildlife Services' alleged failure to use the best scientific and commercial data here, where they were not acting on ESA requirements, does not implicate the <u>Bennett</u> holding. In <u>Bennett</u>, the Bureau of Reclamation had concluded that its proposed action might affect endangered or threatened species, and had initiated formal consultation with FWS under section 1536(a)(2). <u>Id.</u> at 158-59. The petitioners in that suit sought judicial review of the Biological Opinion FWS issued following consultation. <u>Id.</u> at 159. Here, neither of the Wildlife Services issued a Biological Opinion subject to review because the Forest Service never engaged in formal consultation.

Plaintiffs also argue that the Wildlife Services' concurrences were part of the informal consultation process described in 50 C.F.R. § 402.13(a), and are therefore part of a required legal consultation.[2]  <u>See</u> Opp'n at 10. Based on the allegations in the Complaint, however, this cannot be the case, for the same reasons described above. The informal consultation process is described in the regulation as including "all discussions, correspondence, etc., between the Service and the

---

[2] Plaintiffs raise this issue in the context of their right to sue under the APA, but the Court addresses it here in part, because it relates to the Wildlife Services' contentions regarding injury in fact.

11

Federal agency or the designated non-Federal representative, designed to assist the Federal agency in determining whether formal consultation or a conference is required." 50 C.F.R. § 402.13(a). Plaintiffs allege that the Regional Forester, acting for the Forest Service, prepared an EIS concluding that the MIS Amendment would have "no ecological effects" and a Biological Assessment concluding that the MIS Amendment would have "no effect" on endangered or threatened species. Compl. ¶¶ 40-41. In reaching the "no effect" determination without the input of the Wildlife Services, the Forest Service concluded that consultation was not necessary, so there was no need to invoke the informal consultation process of 50 C.F.R. § 402.13(a) any more than there was the formal process of 50 C.F.R. § 402.14(a). See Pac. Rivers Council, 30 F.3d at 1054 n.8.

Finally, Plaintiffs argue, in addressing the second element of standing, that their allegation that the "no effect" determination was erroneous is sufficient at this stage to establish standing for suit against the Wildlife Services. Opp'n at 17. The Court disagrees. Plaintiffs allege in the Complaint that the Forest Service was wrong and that the MIS Amendment would in fact affect certain endangered and threatened species. See Compl. ¶¶ 63-68. If these allegations are true, Plaintiffs argue, the Wildlife Services were required to engage in formal consultation with the Forest Service. Opp'n at 17. Thus, according to Plaintiffs, the failure to consult was a procedural violation sufficient to establish standing. Id. Plaintiffs misinterpret the requirements of section 7(a)(2). Even if their

12

allegations are true and the MIS Amendment would have affected the relevant species, the Wildlife Services still would not have been obligated to engage in consultation unless the Forest Service initiated it.  For the Wildlife Services, the consultation is triggered by the action agency, not by the potential effects of the proposed action.  In Defenders of Wildlife, FWS disagreed with the action agency's "no effect" determination and repeatedly objected, requested consultation, and issued a nonconcurrence. 414 F.3d at 1068.  The Ninth Circuit affirmed the district court's ruling that "the 'no effect' determination was a decision for the [action agency] to make, not the [FWS]."  Id. at 1069.  Until an action agency requests consultation, the Wildlife Services have no obligation to consult, and in fact cannot engage in consultation, even if they believe the "no effect" determination was erroneous. Thus, even if the Forest Service was wrong about its determination, as Plaintiffs allege in the Complaint, the Court cannot conclude that the Wildlife Services violated any procedural rule.

Plaintiffs therefore have failed to establish an injury in fact with regard to their claim for violation of the ESA.  Because Plaintiffs have failed to establish an injury, the Court need not consider whether the purported injury is traceable to the Wildlife Services' concurrences or whether it would likely be redressed by the Court ruling in Plaintiffs' favor.  Plaintiffs have failed to carry their burden of establishing standing to sue.

**B.   Administrative Procedure Act**

The APA "permits a citizen suit against an agency when an

individual has suffered 'a legal wrong because of agency action' or has been 'adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" Rattlesnake Coalition v. U. S. Envtl. Prot. Agency, 509 F.3d 1095, 1103 (9th Cir. 2007) (quoting 5 U.S.C. § 702). As defined in the APA, "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

Only certain agency actions are subject to judicial review. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. As neither the ESA nor the NEPA makes the Wildlife Services' concurring opinions reviewable, the Court only has jurisdiction if those opinions qualify as final agency actions. Id. The Supreme Court has established the criteria for final agency actions:

> As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the "consummation" of the agency's decisionmaking process - it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."

Bennett, 520 U.S. at 177-178 (internal citations omitted).

The Wildlife Services argue that the concurrences at issue here do not satisfy the second condition. See Mot. at 12. Plaintiffs contend that the concurrences have legal consequences because they "alter the legal regime to which the action agency is subject," Bennett, 520 U.S. at 178, and because they may provide

14

1  evidentiary support for the Forest Service's defense of its own
2  "no effect" determination in this lawsuit.  See Opp'n at 8-10.
3  Neither of Plaintiffs' arguments is persuasive.
4      Plaintiffs' argument that the concurrences alter the legal
5  regime is based on the holding in Bennett that a Biological
6  Opinion issued by FWS was a final agency action subject to review
7  under the APA.  See Opp'n at 8 (citing Bennett, 520 U.S. at 170-
8  71).  As noted above, the Biological Opinion at issue in Bennett
9  came about following formal consultation initiated by the action
10 agency pursuant to 50 C.F.R. § 402.14.  See Bennett, 520 U.S. at
11 159.  The Court concluded that the Biological Opinion has a
12 "virtually determinative" and "powerfully coercive" effect on the
13 action agency because of the liability that agency may face if it
14 does not abide:

> A Biological Opinion of the sort rendered here alters the legal regime to which the action agency is subject.  When it "offers reasonable and prudent alternatives"  to the proposed action, a Biological Opinion must include a so-called "Incidental Take Statement"--a written statement specifying, among other things, those "measures that the [Service] considers necessary or appropriate to minimize [the action's impact on the affected species]" and the "terms and conditions . . . that must be complied with by the Federal agency . . . to implement [such] measures."  16 U.S.C. § 1536(b)(4).  Any taking that is in compliance with these terms and conditions "shall not be considered to be a prohibited taking of the species concerned."  § 1536(o)(2).  Thus, the Biological Opinion's Incidental Take Statement constitutes a permit authorizing the action agency to "take" the endangered or threatened species so long as it respects the Service's "terms and conditions."  The action agency is technically free to disregard the Biological Opinion and proceed with its proposed action, but it does so at its own peril (and that of

15

> its employees), for "any person" who knowingly "takes" an endangered or threatened species is subject to substantial civil and criminal penalties, including imprisonment.

520 U.S. at 169-70 (modifications in original). The Wildlife Services' concurring opinions do not carry the same weight. Where an action agency makes a "no effect" determination without consultation, as the Forest Service did here, that agency carries the risk of liability if the determination is erroneous. The Wildlife Services made this clear when they promulgated the regulations implementing the ESA:

> Although the Service will, when appropriate, request consultation on particular Federal actions, it lacks the authority to require the initiation of consultation. The determination of possible effects is the Federal agency's responsibility. The Federal agency has the ultimate duty to ensure that its actions are not likely to jeopardize listed species or adversely modify critical habitat. The Federal agency makes the final decision on whether consultation is required, and it likewise bears the risk of an erroneous decision.

Interagency Cooperation, 51 Fed. Reg. 19926, 19949 (June 3, 1986). Unlike a Biological Opinion, the "no effect" determination cannot release the action agency from liability. See 16 U.S.C. § 1536 (b)(4)(iv), (o)(2). The same distinction applies to Plaintiffs' other cited authorities on this point. See Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nat'l Marine Fisheries Serv., 265 F.3d 1028, 1031 (9th Cir. 2001) (judicial review of four NMFS Biological Opinions); Nat'l Wildlife Fed'n v. Harvey, 440 F. Supp. 2d 940, 946-47 (E.D. Ark. 2006) (NMFS concurring opinion conditioned upon compliance with numerous recommendations). The

16

1  Forest Service's obligations, and its potential liability, arise
2  under the ESA and were not altered in any way by the concurrences.
3  See Fairbanks N. Star Borough v. U.S. Army Corp. of Eng'rs, 543
4  F.3d 586 (9th Cir. 2008)("Fairbanks").

5      The only other legal consequence which Plaintiffs claim may
6  flow from the Wildlife Services' concurrences is that the Forest
7  Service may rely on those concurrences as evidence in defending
8  its original "no effect" determination.  See Opp'n at 9-10.
9  Plaintiffs' support for this position is found in Cascadia
10 Wildlands Project v. U.S. Fish & Wildlife Serv., 219 F. Supp. 2d
11 1142 (D. Or. 2002).  The court there found that, "The ability of
12 the Forest Service to use the 'no jeopardy' conclusion in [the
13 Biological Opinion] in defense of its actions in a future
14 proceeding is an appreciable legal consequence."  Id. at 1148.
15 The Court declines to follow Cascadia Wildlands.  First, that case
16 involved a challenge to a Biological Opinion issued by FWS after
17 formal consultation pursuant to 50 C.F.R. § 402.14(a), which did
18 not take place here.  Id. at 1145-46.  Second, to the extent the
19 facts of that case are comparable, the Court respectfully
20 disagrees with the conclusion of Cascadia Wildlands.  Nothing in
21 the concurring opinions limits the extent of the Forest Service's
22 obligation to comply with the ESA.  If the Forest Service attempts
23 to rely on the concurrences in defending its own actions,
24 Plaintiffs may challenge the legitimacy of the concurrences in
25 that context, just as they might seek to undermine any other
26 evidence the Forest Service introduces in its defense.  The
27 Court's conclusion that the concurrences are immune from judicial

17

review does not amount to a finding that they are valid, well-reasoned, or otherwise credible evidence to support the Forest Service.

Furthermore, the Ninth Circuit rejected a similar argument in Fairbanks. In that case, the plaintiffs challenged the Army Corps of Engineers' determination, in a written opinion, that the plaintiffs' land contained waters of the United States and might be subject to regulation under the Clean Water Act. 543 F.3d at 589. The court ruled that the Corps' jurisdictional opinion had no legal consequence, and therefore was not a final agency action, even though it could prevent plaintiffs from asserting a "good faith" defense in a future proceeding. Id. at 595. The court reasoned that while the jurisdictional determination might be used as evidence, there was no legal reason to treat it differently from any other evidence. Id. ("The Corps' approved jurisdictional determination has no more legal effect on Fairbanks' ability eventually to assert a good faith defense than would, for example, a report by a private wetlands consultant informing Fairbanks that its property contained wetlands.").

The Court concludes that the Wildlife Services' concurrences in the Forest Service's "no effect" determination were not final agency actions and are therefore not subject to judicial review under the APA.

## VI. CONCLUSION

For the reasons set forth above, the Court concludes that it lacks subject-matter jurisdiction over Plaintiffs' claims against

18

the Wildlife Services.  The Court therefore GRANTS the Defendants' Motion.  Plaintiffs' claims against the National Marine Fisheries Service and the Fish & Wildlife Service are DISMISSED.

    IT IS SO ORDERED.

    Dated: February 19, 2009

                                    _____
                                    UNITED STATES DISTRICT JUDGE

19